```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

CONNIE CHITWOOD,                 )
                                 )
          Plaintiff,             )
                                 )
v.                               ) Case No. CIV-19-092-KEW
                                 )
COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,         )
                                 )
          Defendant.             )
```

**OPINION AND ORDER**

Plaintiff Connie Chitwood (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner=s decision should be and is REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 57 years old at the time of the ALJ's decision.

3

Claimant completed his high school education and two years of college.  Claimant has worked in the past as a computer typesetter.  Claimant alleges an inability to work beginning February 2, 2010 due to limitations resulting from fibromyalgia, degenerative disc disease of the cervical and lumbar spines, diabetes mellitus, and obesity.

### Procedural History

On May 20, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On May 4, 2015, Administrative Law Judge ("ALJ") Lantz McClain conducted a video hearing.  On June 15, 2015, the ALJ entered an unfavorable decision.  On appeal to this Court, Defendant filed a request to remand.

On remand, the same ALJ conducted a second administrative hearing by video on December 1, 2017, with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma.  The ALJ entered a second unfavorable decision on January 19, 2018.  On January 14, 2019, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final

decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform her past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical source evidence; and (2) failing to perform a proper analysis at step four.

### RFC Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of fibromyalgia, diabetes mellitus, degenerative disc disease, and obesity.  (Tr. 440).  He determined that Claimant could perform sedentary work.  In so doing, the ALJ found Claimant could occasionally and frequently lift or carry up to ten pounds.  He found Claimant could stand or walk at least two hours in an eight hour workday and sit at least six hours.  She could no more than frequently climb stairs or ramps, balance, stoop, kneel, crouch, or crawl.  She must avoid

hazards such as heights and open machinery. (Tr. 442).

The ALJ determined that the Claimant could perform her past relevant work as a computer typesetter. (Tr. 446-47). As a result, the ALJ concluded Claimant was not under a disability from February 2, 2010 through December 31, 2013, the date last insured. (Tr. 447).

Claimant contends the ALJ failed to properly evaluate the medical source statement provided by Dr. Jon Gustafson, Claimant's treating neurologist. Dr. Gustafson completed an RFC questionnaire concerning Claimant's condition. He stated that he had treated Claimant since 2011 and that she had been diagnosed with diabetic neuropathy and cervical and lumbar degenerative disc disease. Claimant's prognosis was "guarded." Symptoms of her conditions included pain and weakness. He supported his findings with his records. Dr. Gustafson checked the box on the form to show that Claimant's conditions "never" were severe enough to interfere with attention and concentration. He also stated that Claimant's medication had side effects of possible dizziness and confusion. (Tr. 371).

Dr. Gustafson also estimated that Claimant's conditions would limit her to sitting for thirty minutes at one time and standing

for fifteen minutes at one time with no need to sit in a recliner or lie down.  Claimant would not require a cane for standing or walking.  He found Claimant would need to shift positions from sitting, standing or walking and would have to take unscheduled breaks one or two times per hour for ten minutes.  Claimant was found to be able to lift and carry less than ten pounds frequently and occasionally up to 20 pounds.  She had no significant limitations in doing repetitive reaching, handling, or fingering.  She could use both hands and arms for grasping, twisting, turning objects, fine manipulation, and reaching for 80% of an eight hour workday.  Claimant could stoop, crouch, and climb stairs for 5% of the workday and never kneel.  Dr. Gustafson estimated Claimant would have "good days" and "bad days" but would never be absent from work.  He did not expect Claimant to have any other limitations upon working and did not believe she was a malingerer.  (Tr. 372).

Dr. Gustafson also completed an Onset Date Questionnaire on October 9, 2014.  He again stated that he had treated Claimant since August of 2011.  He opined that Claimant had the limitations contained in the RFC form since about December of 2013.  He checked on the form that he based his estimation upon direct

7

observation/treatment, physical examination, historical medical records, clinical testing, patient report, his own experience and background, and imaging studies. (Tr. 373).

The ALJ recited Dr. Gustafson's treatment notes and his findings in the RFC source statement. (Tr. 443-46). He gave "some weight" to the exertional limits set forth by Dr. Gustafson, finding them to be consistent with a sedentary RFC. However, the ALJ found that the record did not support Dr. Gustafson's requirement for a sit/stand option and unscheduled breaks. He noted Claimant's pain is managed solely by medication and she has not undergone any type of physical therapy, steroid injections, surgical intervention, or any other treatment from the onset date to the date last insured. (Tr. 446). The ALJ concluded that any breaks Claimant might need would be accommodated by normal breaks with sedentary work. He also found Dr. Gustafson's RFC was internally inconsistent, noting that the physician found no significant limitation in repetitive reaching, handling, or fingering, but "then goes on to state the claimant has limitations of 80% of an 8-hour workday in these activities. Thus, his RFC is not wholly consistent with the record, nor is it internally consistent." Id.

Defendant admits that the ALJ misread or misconstrued Dr. Gustafson's findings with regard to the limitation on reaching, handling, and fingering.  It is clear Dr. Gustafson found that Claimant could perform these activities 80% of the workday or, conversely, could not perform these activities 20% of the workday.

Considerable evidence exists in within months and years of Claimant's date last insured which indicates Claimant underwent nerve blocks and injections for her back and leg pain. (Tr. 817-99). Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered. *See* Hamlin v. Barnhart, 365 F.3d 1208, 1215, 1217 (10th Cir. 2004) (the ALJ should consider evidence from an earlier time period as it may be relevant to whether the claimant is disabled); Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996) (finding that it was legal error if the ALJ did not consider medical evidence because it postdated the date last insured); Baca v. Dep't of Health & Human Servs., 5 F.3d 476, 479 (10th Cir. 1993)(evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the insured period).  The ALJ should have

considered these post-relevant period records when his primary reason for rejecting the treating physician's opinion was the use of conservative treatment. Moreover, reliance upon an erroneous conclusion that Dr. Gustafson's opinion was tainted by internal inconsistency skewed the analysis rejecting his opinion on a sit/stand option and unscheduled breaks. On remand, the ALJ shall reevaluate Dr. Gustafson's opinion and, given the dearth of medical records outside of Dr. Gustafson's treatment records, he shall recontact Dr. Gustafson to ascertain the basis of the finding, if he cannot determine the basis from the record.

### Step Four Evaluation

Claimant carries her argument concerning the additional limitations imposed by Dr. Gustafson, alleging the step four analysis was flawed. On remand, the ALJ shall also reconsider his step four findings in light of the reevaluation of Dr. Gustafson's opinion and the effect it might have upon the RFC.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. ' 405(g), the ruling of the

Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** to Defendant for further proceedings.

IT IS SO ORDERED this 28th day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE